# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

**JANIS ELAINE BROWN**

    Plaintiff,

v.

**MICHAEL J. ASTRUE,**
Commission or Social
Security

    Defendant.

No. 12-CV-4030-DEO

RULING

## I. INTRODUCTION AND BACKGROUND

This matter is before the Court on Plaintiff Janis Elaine Brown's [hereinafter Ms. Brown] Complaint seeking disability benefits under 42 U.S.C. §§ 401 et seq. of the Social Security Act (the "Act"). The parties appeared for a telephonic hearing on November 19, 2012. After listening to the parties' arguments, the Court took the matter under consideration and now enters the following:

## II. FACTUAL BACKGROUND

Ms. Brown was born on May 2, 1961, and was age 48 at the time of the hearing. She completed ninth grade and eventually obtained a GED. She has little work history, occasionally working as a babysitter for family members. She also has

tried to work in the cleaning and telecommunications industries, but has not been successful. Tr. 38-39. She has scored poorly on various IQ tests and generally has difficulty functioning both socially and professionally.

**III. PROCEDURAL HISTORY**

Ms. Brown initially filed her application for Social Security Benefits on June 20, 2008. Her claim was denied. She applied for reconsideration and was denied again. On March 18, 2010, a hearing was held before an Administrative Law Judge (ALJ). On June 22, 2010, the ALJ determined that Ms. Brown was not disabled.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits. 20 C.F.R. § 404.1520. The five successive steps are: (1) determination of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a "severe medically determinable physical or medical impairment" that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments

meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional Capacity (RFC) indicates an incapacity to perform the requirements of his past relevant work, and (5) determination of whether, given a Plaintiff's RFC, age, education and work experience, a plaintiff can "make an adjustment to other work." 20 C.F.R. § 404.1520(4)(i-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time. 20 C.F.R. § 404.1520(a)(4)(i). At step 2, if a plaintiff does not have a "severe medically determinable physical or mental impairment" that lasts at least 12 months, there is no disability. 20 C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and last at least 12 months, a plaintiff is deemed disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step 4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC]. RFC is the "most" a person "can still do" despite their limitations. 20 C.F.R. §

404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009) (citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc)). When determining RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed severe, as well as limitations which result from symptoms, such as pain. 20 C.F.R. § 404.1545(a)(2) and (3). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if, given a plaintiff's RFC, age, education, and work experience, a plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide "evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy." 20

C.F.R. § 404.1560(c)(2). In other words, at step 5, the burden of proof shifts from a plaintiff to the Commissioner of the S.S.A.. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology and determined that Ms. Brown had not engaged in substantial gainful activity since June 20, 2008. Tr. 19. The ALJ also determined that Ms. Brown had several severe impairments including borderline intellectual functioning, depression, and disorder of the back. However, the ALJ determined that Ms. Brown's impairments did not meet the Code's requirements for disability. The ALJ went onto say that Ms. Brown had the residual functional capacity to engage in light work and that there are jobs that exist in significant numbers that Ms. Brown could perform.

Ms. Brown then filed the present Complaint, appealing the ALJ's determination.

**IV. ISSUES**

Ms. Brown makes three general arguments. First, she argues that substantial evidence supports a finding that she

5

is disabled as a result of mental impairment as defined in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Second, she argues that the ALJ failed to determine and communicate a residual functional capacity specific enough to determine if she is disabled or not. Finally, she argues that the overwhelming evidence of record, when given the weight the rules demand, supports a finding that Ms. Brown is disabled.

**V. STANDARD OF REVIEW**

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); Finch v. Astrue, 547 F. 3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question. Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008) (citing Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007)). This Court must consider both evidence that supports and detracts from the ALJ's decision. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) (citing Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)). In applying this standard, this Court will not

reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a whole supports the ALJ's decision. <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 589 (8th Cir. 2004). The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice." <u>Hacker v. Barnhart</u>, 459 F.3d 934, 936 (8th Cir. 2006) (citing <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based in legal error. <u>Lauer v. Apfel</u>, 245 F.3d 700, 702 (8th Cir. 2001). If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his/her decision. <u>Neal v. Barnhart</u>, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

**VI. ANALYSIS**

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act (the "Act"). The Act defines disability as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

7

>      which has lasted or can be expected to last
>      for a continuous period of not less than 12
>      months . . . .

42 U.S.C. § 423(d)(1)(A).

### A.   § 12.05 Mental Impairment

Ms. Brown argues that her condition meets or equals the criteria of Listing § 12.05C, regarding disability arising out of a mental impairment. Specifically, Ms. Brown argues the ALJ failed to recognize she had an IQ score within the requirements of Listing § 12.05C, and that the ALJ erred by finding that she did not have the required functional deficits prior to age 22. Ms. Brown further asserts that even if she does not meet the criteria for Listing 12.05C, she "equals" it.

The impairments described in the Listings are considered "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a), see also Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "For a claimant to show that his impairment matches a [L]isting, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan, 493 U.S. at 530. If an impairment does

8

not meet a Listing, but there are other findings that are at least of equal medical significance, such as unusual symptoms or additional limitations that are not contemplated by the Listing, an impairment may medically equal a Listing. See 20 C.F.R. § 416.926(b)(1)(ii) & (3). Medical equivalence is not designed to provide an alternative for conditions that "almost" meet the requirements of Listings. The Government argues that the record does not a support a medical equivalency evaluation.

Listing § 12.05C states:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22.[and] . . . .(C) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C (emphasis in original).

The required criteria for Listing § 12.05C includes the criteria outlined in the introductory diagnostic paragraph, such as deficits in adaptive functioning initially manifested before age twenty-two; a valid IQ score in the appropriate range; and an additional severe impairment imposing significant work-related limitations of function.[1] See 20 C.F.R. pt. 404, Subpt. P, App. 1, §§ 12.00A (structure of listing for mental retardation) & 12.05C (listing for mental retardation); see also Maresh v. Barnhart, 438 F.3d 897, 899-900 (8th Cir. 2006) (providing that requirements in introductory paragraph of Listing § 12.05C are mandatory). The lowest IQ score in a testing series is used under Listing § 12.05C. See 20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.00D(6)(c).

In evaluating plaintiff's impairments under Listing § 12.05C, IQ level is generally presumed to be stable, but an ALJ should also evaluate test results to assure consistency with the rest of the record. See Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998) ("Indeed, test results of this sort

---

[1]As discussed by counsel during the hearing, adaptive functioning refers to a person's ability, or attempt, to function in society in light of their impairments.

10

should be examined to assure consistency with daily activities and behavior.") (internal quotation marks and citation omitted). The Commissioner is not required to accept a claimant's IQ scores, and may reject scores that are inconsistent with the record. See Christner v. Astrue, 498 F.3d 790, 793-94 (8th Cir. 2007) (citing Muncy v. Apfel, 247 F.3d 728, 733 (8th Cir. 2001)); Clark, 141 F.3d at 1255-56 (citing Mackey v. Shalala, 47 F.3d 951, 953 (8th Cir.1995)). It is also important to note that a finding of a mental impairment so severe that it results in total disability does not require a formal diagnosis of mental retardation. Maresh, 438 F.3d at 899.

In the present case, it is clear that Ms. Brown has severe mental impairments. IQ tests revealed that she had scores of 69 verbal, 79 performance, and 72 full scale. As noted in the Plaintiff's brief, "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction

with 12.05."[2]  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 D(6)(c).  Ms. Brown's verbal score of 69 is her lowest score.  Thus, that score should be used to determine if Plaintiff is presumed disabled by listing 12.05C.  Because the score is between 60 and 70, Ms. Brown is considered mildly retarded.

However, the ALJ did not find Ms. Brown retarded.  The ALJ disregarded the score showing mild mental retardation, and instead relied on Dr. Baker's finding that Ms. Brown had borderline functioning.  Tr. 19-20.  Specifically, the ALJ found that:

> Dr. Baker concluded that the claimant was functioning in the borderline range and not the mentally retarded range of functioning.  Moreover, at the hearing, the claimant testified that she has difficulty understanding things, but was able to get a GED in the 1980s.  She also testified that her reading ability had deteriorated since then.  For these reasons, the undersigned finds that the claimant was not mentally retarded as a child.

Id.  As discussed above, an ALJ can discount a test score if it is not supported by the record.  However, in this case, the

---

[2] *Wechsler series* refers to a standardized intelligence test customarily used in these types of cases.

record clearly contains evidence of Ms. Brown's lifelong mental disability.

Ms. Brown was easily confused by the ALJ's questions during the hearing. See, for example, Tr. 37, where Ms. Brown had a hard time answering a question regarding her disability onset date. See also Tr. 54-5. She has a hard time reading and dropped out of school. Tr. 38-9. At times, she has trouble recalling and communicating such simple concepts as the order among, and number, of siblings in her family. Tr. 303-04. Ms. Brown's work history is almost non-existent. It seems that every job that she has attempted, she has lost due to her various issues. The only evidence on the record that supports the ALJ's determination is Dr. Baker's report, Tr. 568, and the fact that Ms. Brown got her GED.[3] Accordingly, the ALJ's determination regarding that Ms. Brown is not retarded under 12.05 is not supported by substantial evidence.

---

[3] During the hearing, the Government seemed to argue that the manner in which Ms. Brown navigated the Social Security process indicated a higher level of intelligence. The Court agrees that the Social Security process is complicated. However, the fact that the Plaintiff has sought treatment or benefits should not be, and is not, evidence of her mental aptitude.

The remaining record, including Ms. Brown's work history, her testimony, her test scores, and her mental health history all support a finding of her disability. A person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning. Muncy v. Apfel, 247 F.3d 728 (8th Cir. 2001); See, e.g., Branham v. Heckler, 775 F.2d 1271, 1274 (4th Cir. 1985) (absent contrary evidence, an IQ test taken after the insured period correctly reflects claimant's IQ during the insured period). The ALJ stated that because Ms. Brown's reading ability had decreased over time, her mental situation has deteriorated over time. Tr. 20. However, the weight of the evidence in this case supports the finding that Ms. Brown has always been impaired. The ALJ's determination that Ms. Brown's mental functioning has decreased is not supported by substantial evidence. It is not supported, really, by any evidence. It is merely supposition based on her statement that her reading ability has decreased. As indicated above, the assumption is that a person's IQ is stable. Supposition is not enough to overcome that presumption. Substantial

14

evidence supports a finding that Ms. Brown has always been mentally retarded.

The ALJ conceded that Ms. Brown has other physical and mental impairments, including depression and a back disorder, that would satisfy one of the other listings under § 12.05C. Tr. 19. It is clear from the record that Ms. Brown has severe anxiety issues, as well agoraphobia, that preclude normal functioning.[4]

In summation, the required criteria for Listing § 12.05C includes deficits in adaptive functioning initially manifested before age twenty-two; a valid IQ score in the appropriate range; and an additional severe impairment imposing significant work-related limitations of function. See 20 C.F.R. pt. 404, Subpt. P, App. 1, §§ 12.00A. Ms. Brown has a score in the valid range, which is supported by substantial evidence. Ms. Brown has several, other, severe impairments including anxiety and agoraphobia. Finally, there is no concrete evidence that Ms. Brown's condition has deteriorated over time, and the legal assumption is that IQ remains stable

---

[4] As used by counsel during the hearing, Agoraphobia refers to a condition where a person is prevented from leaving their residence because of severe anxiety and fear.

15

over time.  Accordingly, Ms. Brown has met all § 12.05 criteria and is disabled as result of mild mental retardation.

**B.  Residual Capacity**

Because Ms. Brown is mentally retarded, the Court need not reach the residual capacity argument.  Suffice to say that the Court is persuaded that the ALJ erred in determining that Ms. Brown has the residual functional capacity to work.  The questions posed to the vocational expert were not properly formed as they did not consider Ms. Brown's mild mental retardation; nor did they consider that mild retardation in light of Ms. Brown's anxiety and agoraphobia, which alone can have a significant impact on a person's ability to function outside of the home.  Substantial evidence does not support a finding that Ms. Brown could work and the ALJ erred in finding that it did.

**C.  Substantial Evidence**

As discussed above, Ms. Brown is mentally retarded under § 1205.  Accordingly, substantial evidence supports a finding that she is disabled.

**VII. CONCLUSION**

As indicated above, the ALJ incorrectly found that Ms. Brown was not mildly retarded. The question becomes whether this Court should remand for further consideration or solely for the purpose of awarding benefits. The Eighth Circuit has held that a remand for award of benefits is appropriate where "the record 'overwhelmingly supports'" a finding of disability. Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000) (citing Thompson v. Sullivan, 957 F.2d 611, 614 (8th Cir. 1992)).

After carefully considering the evidence, this Court is persuaded that the record overwhelmingly supports a finding of disability as discussed above. Therefore, the ALJ's decision is reversed and remanded solely for the calculation of benefits from the onset date.

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if Brown's attorney wishes to apply for EAJA fees, it must be done within

thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 8th day of January, 2013.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa